## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STAR-K Certification Inc.,

              Plaintiff,          Civil Action No.:

    -against-

                                 **VERIFIED COMPLAINT**

Cheshni Foods LLC and Murat Bahadir Zeybek,

              Defendants.

Plaintiff STAR-K CERTIFICATION INC. (hereinafter "Plaintiff" or "STAR-K") by and through its attorneys, Law Offices of Jan Meyer & Associates, by way of Complaint against Cheshni Foods LLC (hereinafter "Defendant LLC") and Murat Bahadir Zeybek (hereinafter,"Individual Defendant"; Individual Defendant and Defendant LLC are collectively denoted "Defendants") for acts of trademark infringement, false designation of origin, dilution, unfair competition and deceptive trade practices, arising out of Defendant's unauthorized use of STAR-K's registered certification mark on Defendant's products and/or displays and/or websites, allege as follows:

### <u>THE PARTIES</u>

1.     Plaintiff is a corporation formed under the laws of the State of Maryland, having its principal place of business at 122 Slade Avenue, Suite 300 Baltimore, Maryland 21208.

2.     Upon information and belief, Defendant LLC is a limited-liability company formed under the laws of the State of Illinois, having its principal place of business at 2420 East Oakton Street, Suite V Arlington Heights, Illinois 60005

3.     Upon information and belief, Defendant LLC is in the business of manufacturing, retailing, packaging, selling and/or distributing processed foods and/or related products.  Defendants market their products through their website(s), through their sales force and through their distributors.

4.     Individual Defendant is a natural person residing in the State of Illinois.

5.     Upon information and belief, Individual Defendant is a managing member and/or executive official of Defendant LLC.

6.     Upon information and belief, Individual Defendant has been a managing member and/or executive official of Defendant LLC since Defendant LLC's inception.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this dispute arises under the laws of the United States. This Court has jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b), in that this dispute arises under the Lanham Act. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.

8.     This Court may exercise personal jurisdiction over Defendants because Defendants have distributed its products nationally, including but not limited to, through its website(s), social media and/or its network of private label purchasers and distributors. Defendants have also caused harm to STAR-K within the State of New Jersey.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the acts and omissions forming the basis of these claims occurred within the District of New Jersey.

**FACTUAL BACKGROUND**

**STAR-K'S KOSHER CERTIFICATION OPERATIONS AND THE STAR-K MARK**

10.    STAR-K provides kosher product certifications that are trusted and recognized throughout the world. "Kosher," the anglicized form of the Hebrew word "*kasher*" meaning 'fit' or 'proper,' is used to describe food items which Jews may, consist with Jewish religious dietary laws, consume. The market for kosher foods is vast and reaches beyond those who are of the Jewish faith. For example, many Seventh-day Adventists, vegetarians, vegans, those that are lactose-intolerant, and health-conscious consumers seek out kosher foods due to the overlap between the dietary restrictions of such consumers and of the requirements of the kosher laws and/or due to the heightened standards of quality and ingredient control involved in the production and manufacture of kosher foods. According to several sources, the kosher consumer market was estimated in 2010 to include more than 14 million consumers.

11.    Under STAR-K policy, for a food product to be certified as kosher, all of the ingredients and sub-units in such food product must be kosher. Even one non-kosher ingredient in a food product can render the entire product non-kosher. Further, for a food product to be considered and certified as kosher, it may be processed only on equipment whose kosher status has not been compromised. (Equipment previously used for the processing of non-kosher foods often requires, as a pre-requisite for kosher use, a religiously-prescribed purging through fire, hot water, or other heat medium. It is major part of the charge of a kosher certification agency, such as STAR-K, to ensure that all equipment requiring such purging undergoes the requisite process as required by Jewish law.)  In summation, certification of food products as kosher involves meticulous

examination and oversight of all ingredients and processes related to such production to ensure that the products meet the standards of the kosher laws.

12. Consumers and other purchasers are often unable to determine whether food products are kosher by simply reading the ingredient panels on the labels of the food products. Food products may contain ingredients that, depending on the source of supply of such ingredients, may be either kosher or non-kosher. For example, glycerins may be either of animal (non-kosher) or vegetable (kosher) origin. Further, many ingredients contain subunits that are not detailed on the ingredient panels. For example, flavors are composed of scores of ingredients, but only the word "flavor" typically appears on the ingredient label. Furthermore, consumers or other purchasers cannot, based on an ingredient panel or any other publicly-available means, verify the kosher status of equipment used to produce the subject product.

13. Due to the intricacy of kosher laws and of food production and the limits on the ability of consumers and other purchasers to determine whether a food product is kosher, consumers and other purchasers rely upon the certification of kosher certification agencies, such as STAR-K, to ascertain and advise as to products' kosher status.

14. STAR-K is the sole and exclusive owner of the kosher certification mark ("the STAR-K mark") consisting of a single five-point star withe the letter 'K' in the center of the star. Since at least 2012, the STAR-K mark has been used on thousands of food and food-related products as an indicator that such products have been certified as kosher by STAR-K. STAR-K has spent considerable money, time and energy promoting its certification services and the STAR-K mark. The STAR-K mark is a central feature of STAR-K's promotional efforts. The STAR-K mark has achieved a high degree of consumer

recognition and has become famous as one of the most widely recognized indicators of kosher foods throughout the world. Kosher and non-kosher consumers recognize the STAR-K mark as a symbol of integrity, trustworthiness and reliability.

15.    The STAR-K mark is federally registered under Registration No. 4,160,214 and Serial No. 85-356,840.  A true and correct copy of the Certificate of Registration for the STAR-K mark is attached hereto as **Exhibit A**.

## DEFENDANTS' UNAUTHORIZED USE OF THE STAR-K MARK

16.    On or before November 1, 2024, it was brought to the attention of Plaintiff that one or more of Defendant LLC's products sold in the marketplace bore the STAR-K mark. Please see images attached hereto as **Exhibit B**.

17.    Upon information and belief, Defendant LLC produces, sells, offers for sale, distributes, and/or advertises Defendant LLC's products in packaging and/or labels bearing the STAR-K mark.

18.    Defendant LLC's use of the STAR-K mark on Defendant's products is not authorized by Plaintiff.

19.    Plaintiff and Defendant LLC had never entered into a contract whereby Defendant LLC would receive from STAR-K Kosher certification and/or permission to utilize the STAR-K mark on Defendant LLC's products.

20.    Plaintiff never approved any of Defendant LLC's products as certified kosher or permitted the use of the STAR-K mark on any of its products.

21.    On or before November 1, 2024, Defendant LLC's products bearing, without STAR-K's authorization, the STAR-K mark were produced, available for sale or distributed to the public at large through distribution channels.

22. At no time since Plaintiff was so informed about Defendant LLC's unauthorized use of the STAR-K mark has Defendant ever been granted permission to utilize the STAR-K mark on its products.

23. Upon information and belief, Defendant LLC knew that the STAR-K mark signified that a product had been approved by a certifying body and/or satisfied specific criteria enforced by such certifying body.

24. Upon information and belief, Defendant LLC used the STAR-K mark, as delineated in Paragraphs 16 through 23 above, at the behest and direction of Individual Defendant.

25. Upon information and belief, Individual Defendant occupies a position of authority within Defendant LLC so as to be able to make decisions regarding the packaging and/or branding of Defendant LLC's products offered for sale.

26. Upon information and belief, Individual Defendant caused said unauthorized use of the STAR-K mark knowing that the STAR-K mark signified that a product had been approved by a certifying body and/or satisfied specific criteria enforced by such certifying body.

## DEFENDANTS' PRIOR MISAPPROPRIATION OF MARKS OF KOSHER CERTIFICATION AGENCIES

27. In 2018, Defendant LLC similarly, without authorization of STAR-K, used the STAR-K mark on several commercially sold products which were not certified as kosher by STAR-K. A copy of a contemporneous announcement to the kosher-observant public, availalbe online at https://cordetroit.com/news/k-cor-2018-11-28-kashrus-alerts/ (last viewed November 26, 2024), put out by the Council of Orthodox Rabbis of Greater Detroit, a local

kosher-certifying agency, of such unauthorized use of the STAR-K mark by Defendant LLC, is attached hereto as **Exhibit C**.

28.    Likewise, in 2018, Defendant LLC used the mark of the Orthodox Union, another kosher certifying agency, without the authorization of the Orthodox Union. A copy of an alert of such unauthorized use, put out by the Orthodox Union in 2018, is avaialble online at https://oukosher.org/kosher-alerts/kosher-alerts-cheshni-black-olives/ (last viewed November 26, 2024) and is attached hereto as **Exhibit D**. See also Exhibit C.

29.    In said 2018 alert, the Orthodox Union stated that "[c]orrective actions [we]re being implemented," confirming that, at a minimum, Defendant LLC knew by the end of 2018 that unauthorized use of the registered marks of kosher certfication agencies was unlawful and damaging to the mission and purpose of such agencies.

30.    Upon information and belief, said 2018 instances of Defendant LLC's unauthorized use of the marks of, respectively, STAR-K and the Orthodox Union, were undertaken at the behest and direction of Individual Defendant.

31.    Upon information and belief, in 2018, notice from STAR-K and/or the Orthodox Union of Defendant LLC's unauthorized use of the mark of one or both of such agencies, and the need to take corrective action with respect to such unauthorized use, was contemporaneously communicated to Individual Defendant.

## COUNT I
### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1)(a) AGAINST BOTH DEFENDANTS

32.    Plaintiff repeats each prior paragraph of the Complaint with the same force and effect as if set forth fully herein.

33.    Defendants use, and have used,the STAR-K mark in commerce in connection with the production, sale, offering for sale, distribution, and/or advertising of Defendant LLC's

products.

34.    Defendants' use of the STAR-K mark was, and is, without authorization from Plaintiff.

35.    Defendants' products bear a spurious mark which is identical with, or substantially indistinguishable from, the STAR-K mark, and which is a "counterfeit mark" within the meaning of 15 U.S.C. §§ 1116(d), 1117(b), and 1117(c).

36.    Defendants' unauthorized use of the STAR-K mark has caused, and is likely to cause, confusion and/or mistake, or to cause deception as to the origin, sponsorship or approval of such goods by STAR-K, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

37.    Defendants' unauthorized use of the STAR-K mark was done with the knowledge that Defendants lacked any authority to use the STAR-K mark.

38.    Defendants' unauthorized use of the STAR-K mark is intended to deceive consumers into believing that the pertinent products are certified as kosher by STAR-K.

39.    Defendants' infringement of the STAR-K mark is an intentional, knowing and/or willful use of a counterfeit mark within the meaning of 15 U.S.C. § 1117(b)(1) and/or § 1117(c)(2).

40.    Defendants' conduct has caused substantial injury to STAR-K, as well as to those consumers who have consumed and will continue to consume Defendant's products, mistakenly believing that those products are and were certified as kosher by STAR-K.

## COUNT II
### FALSE DESIGNATION OF ORIGIN, 15 U.S.C. 1125(a) AGAINST BOTH DEFENDANTS

41.    Plaintiff repeats each prior paragraph of the Complaint with the same force

and effect as if set forth fully herein.

42.    Defendants' unauthorized use in commerce of the STAR-K mark in connection with the production, sale, offering for sale, distribution, and/or advertising of products constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact which has caused and is likely to cause confusion, or to cause mistake, or to cause deception as to the affiliation, connection or association of Defendant with STAR-K, or as to the origin, sponsorship or approval by STAR-K of its products, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43.    Defendants' unauthorized use in commerce of the STAR-K mark in connection with the production, sale, offering for sale, distribution, and/or advertising of products constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact which misrepresents the nature, characteristics, or qualities of its products, in further violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Upon information and belief, these false designations, descriptions and representations were made by Defendant with knowledge of their falsity, and no appropriate corrective action has been initiated by Defendant to remedy the infringement or to deal with the infringing products that have been placed in commerce that has been brought to Defendants' attention. Defendants' continued false designation, description and representation (including the display of the STAR-K mark on its products labels) have been made by Defendants deliberately.

44.    Defendants' conduct has caused substantial injury to STAR-K, as well as to those consumers who have consumed and will continue to consume Defendants' products believing that STAR-K certified such products as kosher.

## COUNT III

### DILUTION OF FAMOUS MARK UNDER 43(C) OF LANHAM ACT, 15 U.S.C. 1125(C) AGAINST BOTH DEFENDANTS

45.    Plaintiff repeat each prior paragraph of the Complaint with the same force and effect as if set forth fully herein.

46.    The STAR-K mark is a famous mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), in that the mark is distinctive, has been used for many years throughout the world and is widely recognized therein, has been widely advertised and publicized, and the STAR-K mark has not been used by any person or entity other than STAR-K.

47.    Subsequent to the STAR-K mark becoming famous, Defendants have used the STAR-K mark in a manner that caused and continues to cause dilution of the distinctive quality of such mark.

48.    Defendants' dilutive use of the STAR-K mark is willful.

49.    Consumers have purchased Defendant LLC's products that bear the STAR-K mark with the mistaken belief that such products were certified as kosher by STAR-K. These consumers are likely to no longer trust the STAR-K mark, and may cease to trust that mark as evidence that products have been properly certified as kosher by STAR-K.

50.    Defendants' conduct has caused substantial injury to STAR-K, as well as to those consumers who consumed and will continue to consume Defendants' products mistakenly believing that STAR-K certified those products as kosher.

## COUNT IV

### COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT AGAINST BOTH DEFENDANTS

51.    Plaintiff repeats each prior paragraph of the Complaint with the same force and effect as if set forth fully herein.

52.    By the wrongful actions described above, Defendants have violated and infringed upon STAR-K's common law rights in their STAR-K mark and have competed unfairly with the STAR-K under the common law of, inter alia, the State of New Jersey.

53.    Defendant's conduct amounts to deceit. By passing off its goods as being certified as kosher by STAR-K, Defendant's conduct is likely to deceive and confuse the kosher consuming public. This deception is likely to generate profits that, but for said deception, Defendants would not have received.

54.    Defendants' continuing distribution and sale of its products, and its refusal to take any meaningful corrective actions with respect to its ongoing infringement, are willful and have caused, and will continue to cause, immediate, substantial and irreparable injury to STAR-K, which includes irreparable injury to the STAR-K mark, its reputation in the kosher consuming community and its goodwill. Additionally, Defendants' infringing acts have caused STAR-K to suffer damages.

55.    Defendants' infringing and deceitful acts have caused and continue to cause substantial and irreparable injury to consumers who unknowingly purchased, and will purchase, Defendant's products, believing those products to be certified by STAR-K, when those prodcuts are not certifed by STAR-K, resulting in potential violations of those consumers' religious beliefs and/or personal dietary choices, including health ramifications for consumers who seek out kosher foods for health reasons.

**WHEREFORE**, STAR-K respectfully requests that this Court:

A.      Award damages to STAR-K against Defendants in an amount to be determined at trial;

B.      Issue an Order permanently enjoining Defendants from any and all unauthorized uses of the STAR-K mark, and further directing Defendants to take immediate corrective actions to remove the offending products from the marketplace and from its website(s), therefore remedying the continuous infringement of the STAR-K mark and preventing further deception of the kosher consuming public;

C.      Order Defendants to provide an accounting to STAR-K including any and all details regarding production, inventory, distribution, sale, and profits gained from their sale of products bearing the unauthorized STAR-K mark;

D.      Award statutory damages to STAR-K pursuant to 15 U.S.C. § 1117(c)(1) for Defendant's use of a counterfeit of the STAR-K mark;

E.      Award to Plaintiff STAR-K, against Defendants, damages in an amount of three times the amount of STAR-K's damages or Defendants' profits, whichever one is greater, pursuant to 15 U.S.C. § 1117(b) for Defendants' intentional and knowing use of the STAR-K mark, and/or statutory damages to STAR-K pursuant to 15 U.S.C. § 1117(c)(2) for Defendants' willful use of a counterfeit of the STAR-K mark;

F.      Award exemplary and punitive damages to STAR-K against Defendants in an amount to be determined at trial;

G.      Declare this case to be an "exceptional" case within the meaning of 15 U.S.C. § 1117(a), and award STAR-K costs and attorneys' fees against Defendants, which it incurred in connection with this action under 15 U.S.C. § 1117(a), and/or as otherwise

permitted by law;

H.    Award pre- and post-judgment interest to STAR-K against Defendants on all sums due

from Defendant;

I.    Award such other and further relief as the Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

STAR-K respectfully requests trial by jury on all claims so triable.

Dated: November 27, 2024

Law Offices of Jan Meyer and Associates, P.C.

/s/ Jordan Gottheim

Jordan Gottheim, Esq.
Jan Meyer, Esq.
1029 Teaneck Road, Second Floor
Teaneck, New Jersey 07666
jgottheim@janmeyerlaw.com;
jmeyer@janmeyerlaw.com
(201) 862-9600, x210

Counsel for Plaintiff

**<u>VERIFICATION</u>**

Dr. Avrom Pollak, of full age, hereby certifies and states:

1. I am the President of Plaintiff STAR-K CERTIFICATION INC., and as such, I have knowledge of the facts of this matter and am authorized and empowered to make this verification.

2. I have reviewed the Verified Complaint and hereby verify that the statements made therein are true to the best of my knowledge, information and belief, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

Dated: _____November 27_ , 2024

_____
Dr. Avrom Pollak
President
STAR-K Certification Inc.

EXHIBIT A

# EXHIBIT B





















# EXHIBIT C



# ועד הרבנים דעטראיט
# Council of Orthodox Rabbis of Greater Detroit

About Us    Contact Us    Donate

**Home    Kosher ⌄    Beis Din ⌄    Community ⌄**

## K-COR: 2018-11-28 Kashrus Alerts

By Vaad Harabbonim On December 3, 2018 · Add Comment

2018-11-28    **Kashrus Alerts PDF**    available for download.

Mexican Coke and Pepsi information:

• COCA-COLA PRODUCTS FROM MEXICO, including Coca-Cola, Sprite, Fanta and Fresca products, are not OU certi
recommended.

• PEPSI PRODUCTS FROM MEXICO, including Pepsi, Mountain Dew (except Kickstart) and Mist Twist products, are K
Kickstart energy drink is Kosher only when bearing the letters XG in the middle of the second line of the inkjet code on b
bearing a reliable certification on the label.)

BELL PEPPERS FROM ISRAEL (red, yellow and orange) will soon begin appearing in U.S. stores, and will require takii
Maaseros. Consumers should carefully check the fine print on the package, or the sticker on individual peppers sold loo
origin. Often the same brand has some peppers from Israel and some from other locations, so each individual package
checked. Details of the tithing procedure can be found (courtesy of cRc Chicago) at http://kshr.us/cRcMaaser

One should always be careful when buying produce to check the sticker, bag label or original case for the country of orig examples of Israeli produce commonly found in the U.S. include tomatoes, carrots, citrus fruit (oranges, grapefruit, lemo clementines and pomelos), persimmons ("Sharon Fruit"), mangos, dates, dill and parsley.

TRADER JOE'S ROASTED GORGONZOLA CRACKERS bears an OU-D, and lists animal rennet in the ingredients. Th that this product is Kosher and does not contain animal rennet; the listing is in error.

RICOLA COUGH / THROAT DROPS: Only the following five varieties are recommended by the cRc (Chicago Rabbinica require a certification sticker: Honey Herb, Lemon Mint – regular and Sugar Free, Mountain Herb – Sugar Free, and Na Please note that this does not include Ricola Swiss Herbal Sweets.

UNGER'S BARLEY, CHICKPEAS & BEANS: Unger's has issued a notice regarding infestation found in certain batches posted on the K-COR website at https://cordetroit.com/

GORDON CHOICE FRUIT COCKTAIL IN EXTRA LIGHT SYRUP (UPC# 093901225306) and GORDON CHOICE FRU JUICE (UPC# 093901610232) in #10 foodservice size cans, distributed by Gordon Food Service, mistakenly bear an OU case. The individual cans do not bear an OU (but bear a different symbol), and contain carmine, an insect derivative, as These products are not OU certified. — Please note that Gordon Choice Mixed Fruit in Light Syrup (UPC#09390111826 Mixed Fruit in Pear Juice (UPC #093901610348) are OU certified and correctly bear the OU symbol on the cans.

CONCORD GRAPE JUICE CONCENTRATE and WHITE GRAPE JUICE CONCENTRATE distributed by Coloma Froze Michigan, bear an unauthorized cRc symbol on the label. These items are not certified Kosher.

CHESHNI FOODS PRODUCTS are neither OU nor Star-K certified. Some Cheshni Foods products, including black oliv and others, bear an unauthorized OU or Star-K symbol.

"LUCKY LEAF PREMIUM CARAMEL APPLE FRUIT FILLING OR TOPPING" in 9.5 lb. foodservice size pails contains c on the label, but mistakenly bears a plain OU without a D on some labels. — Please note that the 21 oz. retail size can Caramel Apple Fruit Filling & Topping" does not contain dairy ingredients, and is correctly labeled with a plain OU.

BENTON'S SKELETON CHOCOLATE COOKIE KIT, sold at Aldi in the U.S., mistakenly bears a COR (Canada) symbol designation. This product is certified Dairy.

WILD COAST FRUIT CO. Dark Chocolate Blueberries and Dark Chocolate Cranberries mistakenly bear the Kosher Che
certified as Dairy. Consumers finding this product are asked to contact BC (British Columbia) Kosher at 604- 731-1803 o
info@koshercheck.org

RACCONTO PASTA SAUCES have OU certification on several, but not all, varieties; check each label. Note that the Vo
cream and states OU Dairy.

DUNCAN HINES is recalling certain batches of its Classic Butter Golden, Classic White, Classic Yellow and Signature C
with Best If Used By dates ranging from March 7 through March 13, 2019, due to possible salmonella contamination. De
https://www.prnewswire.com/news/Conagra+Brands or 888-299-7646.

BARCELONA NUT CO. is recalling certain batches of its Roasted and Salted Pistachios (in-shell) with expiration dates
10/10/2019, due to possible salmonella contamination. Details are available from michelleo@barcelonanut.com (e-mail)

Home    About Us    K-COR – Kosher    Beis Din    Community    Contact Us    Autopayment

© 2013 - 2018. Questions, feedback, concerns? Contact website@cordetroit.com.

EXHIBIT D



# Kosher Alerts Cheshni Black Olives; Apricots;
# Dates

November 1, 2018

**Brands:**

Cheshni

**Products:**

Black Olives

**Company:**

Cheshni Foods LLC

**Issue:**

Unauthorized OU The Orthodox Union does not certify any Cheshni product.  Some Cheshni Black Ol
dried apricots, figs and dates are labeled with an unauthorized OU symbol.  Corrective actions are be



**CONSUMER RESOURCES**    **INDUSTRIAL RESOURCES**    **OU CO
SERVI**

**KOSHER HOTLINE: (212) 613-8241**

**NEW COMPANIES: (212) 613-8372**

**OU DIRECT**

**CONTACT US**

**OU KOSHER IS A NONPROFIT AND A PROGRAM**

**OF THE ORTHODOX UNION**

**PRIVACY POLICY**

**COOKIE POLICY** ()

 



**© 2024 ORTHODOX UNION**

**ALL RIGHTS RESERVED**